UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW N. WARSHAW,

        Petitioner,

v.                                   Case Number: 07-CV-12842
                                   Honorable Avern Cohn

JOHN PRELESNIK,

        Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

## I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Andrew M. Warshaw is a state inmate, proceeding pro se,  at the Muskegon Correctional Facility in Muskegon, Michigan.  Petitioner challenges his convictions for first-degree murder, under alternate theories of felony murder and premeditated murder, and for unlawfully driving away an automobile (UDAA).  He was sentenced, as a third-habitual offender, to life in prison for the murder conviction and 57 to 120 months in prison for the UDAA conviction.  Petitioner raises claims concerning his statutory and constitutional rights to a speedy trial.  Respondent filed a response to the petition, asserting that Petitioner's claims are either not cognizable on federal-habeas review or procedurally defaulted. For the reasons which follow, the petition will be denied.

## II.  Facts and Procedural History

Petitioner's convictions arose out the murder and vehicle theft of Stephen Kaplan on or about May 10, 2002.  Randy Farb, Kaplan's friend, found Kaplan's body in his

apartment on May 17, 2002. Farb, who had a key to the apartment, went there looking for him, after not seeing him for about a week. Once inside, Farb discovered the body and called 911. The medical examiner in this case determined that Kaplan died from thirty-four puncture and stab wounds to the abdomen, chest, neck, and face, with the most significant being the four wounds to the heart. Because Kaplan's body was too badly decomposed, the medical examiner could not identify the type of knife used in the stabbing. It was the prosecution's theory that Petitioner robbed and killed Kaplan in an effort to fuel his crack habit. There were no witnesses to the crime. However, there was evidence that placed Petitioner at Kaplan's apartment.

Jewelry identified as Petitioner's was found in the apartment, near Kaplan's body. A footwear impression identified as being made by one of Petitioner's shoes was also found near Kaplan's body. DNA evidence found on clothing at Kaplan's apartment was identified as Petitioner's. Blood found on a knife in Kaplan's bathroom sink matched Kaplan's. A bandage found in the toilet had blood from both Kaplan and Petitioner. There was also testimony that Petitioner suffered a deep self-inflicted wound on his arm that required bandaging.

The car, a 1990 Buick Riveria, that was taken from Kaplan's apartment was owned by his brother, Dr. Lauren Kaplan. The car was found in Flint, Michigan. Fingerprints found in the vehicle did not match either Kaplan's or Petitioner's but blood and a footwear impression on the car matched Petitioner's shoes.

Sandra Church, Petitioner's friend, testified that Petitioner was in possession of Kaplan's car on May 10, 2002. Church testified that she called the police on that day,

-2-

after Petitioner woke her, and her boyfriend, and asked to use her phone.  She said that subsequently, he left the car in her driveway.  The police checked the vehicle identification number but at that time the car had not yet been reported stolen.  Later that day, Petitioner came back to pick up the car. Kaplan's car was not reported stolen until after his body was discovered on May 17, 2002.

As a result of the police inquiry regarding the vehicle on May 10th, coupled with interviews with Church, and Petitioner's former girlfriend, Jessica Englund, who noted Petitioner's unusual behavior that same day (she testified that Petitioner was wearing women's clothing that day), notification to all agencies was released regarding Petitioner being wanted for questioning in connection with the Kaplan murder.

Then, on May 21, 2002, Petitioner was arrested in Sterling Heights, Michigan, on an unrelated offense.  The Flint Police Department secured a search warrant for Petitioner's personal items obtained during that arrest.  The laboratory analysis of those items, as well as those found at the scene, led to his arrest in this case.

Petitioner remained an inmate at the Macomb County jail as a result of a conviction for assault with intent to do great bodily harm less than murder until May 1, 2003.  He was then transferred to the Genesee County jail.  A preliminary examination in this case was held on May 14, 2003; Petitioner was bound over for trial as charged. He was arraigned on June 16, 2003.

Subsequently, on July 21, 2003, Petitioner's counsel filed a motion for discovery and for the appointment of a DNA expert to assist with the case.  On August 22, 2003, Dr. Theodore D. Kessis was appointed.

On September 8, 2003, Petitioner's counsel forwarded to the prosecution a list of eighteen items that Dr. Kessis requested to review in connection with his analysis of the evidence against Petitioner.  A hearing was held on October 27, 2003.  According to the prosecution, the request was forwarded to the police DNA laboratory but the laboratory director refused to turn over the requested items. The prosecution did not dispute that the defense could not proceed with trial in absence of those requested materials.  At the hearing, Petitioner's counsel also sought dismissal of the charges against Petitioner on the basis that the prosecution failed to comply with Michigan's statutory speedy trial rule.  The trial court denied Petitioner's request for dismissal.

On November 13, 2003, the circuit court ordered the Michigan State Police to turn over the requested items.

On January 12, 2004, the prosecution still had not turned over the requested discovery.  As a result, Petitioner's counsel filed another motion.  The People opposed that motion, questioning the qualifications of Dr. Kessis and preemptively seeking to exclude his testimony.  A hearing was scheduled to resolve the matter but prior to that hearing, Dr. Kessis withdrew from the case. The trial court nevertheless entered an order precluding his testimony.

Then, on March 24, 2004, the trial court appointed Speckin Forensic Laboratories to assist the defense with the analysis of the DNA evidence.  Trial was set to begin on June 15, 2004, but was rescheduled several times for unexplained reasons.  Trial ultimately began on July 7, 2004.

-4-

Subsequently, following a jury trial, Petitioner was convicted and sentenced as stated above.

Petitioner then filed an appeal as of right with the Michigan Court of Appeals, asserting the following claim:

I.     [Petitioner] convictions must be reversed where his trial commenced nearly two years after the warrant for his arrest issued in violation of his statutory and constitutional rights to a speedy trial.

On January 31, 2006, the court of appeals affirmed Petitioner's convictions. People v. Warshaw, No. 257589, 2006 WL 234872 (Mich.Ct.App. Jan. 31, 2006). Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied Petitioner's application on September 20, 2006. People v. Warshaw, 477 Mich. 859 (2006).

Petitioner thereafter filed the present habeas petition, raising the same claim as raised in the state appellate courts.

III.  Analysis

A.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 et seq., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

-5-

unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court

undertook a detailed analysis of the correct standard of review under the AEDPA.

According to the Supreme Court:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied-the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13 (O'Connor, J., delivering the opinion of the Court on this issue).

The AEDPA also requires that this Court presume the correctness of state court

factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this

presumption only with clear and convincing evidence. See Warren v. Smith, 161 F.3d

358, 360-61 (6th Cir. 1998).

-6-

B.  Speedy Trial Claim

Petitioner argues that because his trial commenced nearly two years after the

warrant for his arrest was issued, he was denied his right, under Michigan's 180-day

rule and the federal constitution, to a speedy trial.

Petitioner's claim that the 180-day rule, stated in MICH. COMP. LAWS § 780.131,

presents a matter of state law which is not cognizable on federal-habeas review.  Lewis

v. Jeffers, 497 U.S. 764, 780 (1990).  It is "not the province of a federal[-] habeas court

to reexamine state-court determinations on state-law questions."  Estelle v. McGuire,

502 U.S. 62, 67-68 (1991).  A federal court is limited on federal-habeas review to

deciding whether a state-court conviction violates the Constitution, laws, or treaties of

the United States.  Id.  A violation by state officials of a state-speedy-trial law, taken

alone, does not present a federal claim for review in a habeas petition.  Norris v.

Schotten, 146 F.3d 314, 328 (6th Cir. 1998).  Accordingly, Petitioner is not entitled to

habeas relief on this ground.

Regarding Petitioner's claim that his federal-constitutional rights to a speedy trial

were violated, Respondent says that this claim is barred by procedural default because

Petitioner never formally demanded his right to a speedy trial.  While the procedural

default doctrine precludes habeas relief on a defaulted claim, the procedural default

doctrine is not jurisdictional.  See Trest v. Cain, 522 U.S. 87, 89 (1997).

Thus, while the procedural default issue should ordinarily be resolved first,

"judicial economy sometimes dictates reaching the merits of [a claim or claims] if the

merits are easily resolvable against a petitioner while the procedural bar issues are

-7-

complicated." Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal

citations omitted); see also, Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (noting

that procedural default issue should ordinarily be resolved first, but denying habeas

relief on a different basis because resolution of the default issue would require remand

and further judicial proceedings).

      Here, the interests of judicial economy are served by considering Petitioner's

claim.  A review of the record shows that Petitioner's counsel sought dismissal of the

charges in a hearing–based on a violation of Michigan's 180-day rule, MICH. COMP.

LAWS § 780.131.  The Michigan Supreme Court has interpreted MICH. COMP. LAWS §

780.131 "as an effort to secure to state prison inmates their constitutional right to a

speedy trial." People v. Hill, 402 Mich. 272, 280 (1978) (emphasis added).  With that in

mind, this Court construes Petitioner's invocation at that hearing as a demand for a

speedy trial.  Therefore, the procedural default will not be invoked in this case and the

Court will proceed directly to the merits of Petitioner's federal-constitutional-speedy-trial

claim.

      The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused

shall enjoy the right to a speedy and public trial."  U.S. Const. Amend. VI; see also

Klopfer v. North Carolina, 386 U.S. 213 (1967) (holding that the right to a speedy trial is

incorporated through the Fourteenth Amendment and thus applies to the states).  The

Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972), set forth a four-factor test

for evaluating a Sixth Amendment speedy-trial claim: (1) length of delay; (2) the reason

for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the

defendant.  None of those four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533.  Applying those factors here shows that Petitioner's speedy-trial rights were not violated.

### 1.  Length of the delay

The length of the delay is a threshold factor for any Sixth Amendment speedy-trial claim.  United States v. Jackson, 473 F.3d 660, 664 (6th Cir.), cert. denied, --- U.S. ----, 127 S.Ct. 2294 (2007).  "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." United States v. Gardner, 488 F.3d 700, 719 (6th Cir. 2007); see also Doggett v. United States, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.").  Thus, this Court must determine, at the outset, whether the delay here was "uncommonly long" or "extraordinary." United States v. Watford, 468 F.3d 891, 901 (6th Cir. 2006), cert. denied, --- U.S. ----, 127 S.Ct. 2876 (2007) (citations omitted).

There is a threshold requirement that the delay be uncommonly long.  A delay approaching one year is presumptively prejudicial. Doggett, 505 U.S. at 652 n. 1.  In this context, the presumption of prejudice "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Id.  If this threshold is satisfied,

judicial analysis continues, and the length of the delay becomes one factor in the analysis.  Doggett, 505 U.S. at 652.  Furthermore, the longer the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim," the stronger the presumption of prejudice to the defendant from the pretrial delay.  Id. at 652.  The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier.  United States v. Marion, 404 U.S. 307, 320 (1971); Maples v. Stegall, 427 F.3d 1020, 1026 (6th Cir. 2005).

Here, the Court assumes for purposes of this analysis that there was a 23-month delay from the time the warrant was issued on August 16, 2002, until trial on July 7, 2004.  The Court will assume that the delay is presumptively prejudicial and will address the remaining factors, which, as discussed below, outweigh this presumption.

2.  Reason for the delay

In considering the reasons for delay, this Court must consider the justifications offered by the Government, as "only those periods of delay attributable to the government or the court are relevant to [Petitioner's] constitutional claim."  United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000).  In Barker, the Supreme Court established a sliding scale of justifications for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted); see also Maples, 427 F.3d at 1026 ("In

-10-

2:07-cv-12842-AC-MKM   Doc # 7   Filed 02/12/09   Pg 11 of 16   Pg ID 1449

considering this factor, we weigh some reasons more heavily than others.  For instance,
government delays motivated by bad faith, harassment, or attempts to seek a tactical
advantage weigh heavily against the government, while 'more neutral' reasons such as
negligence or overcrowded dockets weigh against the state less heavily.").  "The
purpose of this weighting scheme is to quantify 'whether the government or the criminal
defendant is more to blame for [the] delay.'"  Watford, 468 F.3d at 902 (citations
omitted); see also United States v. Tinson, 23 F.3d 1010, 1013 (6th Cir. 1994)
(describing the "time during which [defendants] were not complicit in the delay" as
"actual delay").  In assessing the cause for the delay, "[t]he core task is determining
which party shoulders the balance of blameworthiness for th[e] delay."  United States v.
O'Dell, 247 F.3d 655, 667 (6th Cir. 2001).

     As to this claim, the Michigan Court of Appeals held:

> Although the delay in this case was approximately 23 months,
> [Petitioner's] proceedings in Macomb County caused a substantial portion
> of the delay.  At the time the warrant for [Petitioner's] arrest in this matter
> was issued, [Petitioner] was already incarcerated and awaiting trial in
> Macomb County on unrelated charges.  [Petitioner] was sentenced to
> prison in the Macomb County case on May 1, 2003, and was brought to
> the Genesee County Jail on the same day.  His preliminary examination
> then commenced on May 14, 2003.  The second day of [Petitioner's]
> preliminary examination, however, was not held until June 4, 2003, to
> allow [Petitioner] time to return to Macomb County in order to file
> documents for his appeal in the Macomb County case.  To the extent that
> the delay caused by the Macomb County proceedings is attributable to the
> prosecutor, it is accorded minimal weight.  Cf. Cain, supra at 113 (delay
> caused by docket congestion attributable to prosecution, but accorded
> minimal weight).  The fact that [Petitioner] was also being prosecuted in
> Macomb County and was housed in the Macomb County Jail rather than
> in Genesee County was not the fault of the prosecutor.  The delay that the
> multiple prosecutions caused was evident by the fact that his preliminary
> examination had to be adjourned for three weeks so that he could return
> to Macomb County to file his appellate documents in that case.

-11-

[Petitioner] was brought to the Genesee County Jail on the same day that he was sentenced in Macomb County, and his preliminary examination began 14 days later.  Thus, it does not appear that the prosecutor unnecessarily delayed proceedings as a result of the Macomb County proceedings. Accordingly, although attributable to the prosecutor, we accord minimal weight to the delay of trial associated with [Petitioner's] pending charges in Macomb County.

[Petitioner] concedes that the time between his arraignment on June 16, 2003, and the time that the trial court appointed Dr. Theodore D. Kessis as a defense expert in deoxyribonucleic acid (DNA) analysis on August 22, 2003, is attributable to him.  Thereafter, [Petitioner] sought discovery of a number of items that Dr. Kessis requested in a letter dated September 8, 2003.  [Petitioner] did nothing, however, until October 20, 2003, eight days before trial was scheduled to commence, when he filed a motion to dismiss or adjourn trial because of noncompliance with Dr. Kessis' request.  At the October 27, 2003 hearing on this motion, however, the trial court had nothing to enforce because [Petitioner] had never obtained a discovery order regarding the disputed items.  [Petitioner] did not obtain such an order until November 13, 2003.  Thus, the delay from October 20, 2003 until November 13, 2003 is attributed to [Petitioner] because time needed to adjudicate defense motions is charged to the [Petitioner].  Cain, supra; see also People v. Gilmore, 222 Mich.App 442, 461; 564 NW2d 158 (1997).

On January 5, 2004, [Petitioner] filed a motion requesting certain electronic data in possession of the State Police Crime Lab, and a dispute developed regarding whether the prosecutor could legally produce the requested information.  The parties agreed to present both expert witnesses for a hearing regarding production of the disputed material.  As stated in Gilmore, supra at 461, a prosecutor may contest a defense motion without fear of violating a defendant's right to a speedy trial.  In that case, this Court determined that the defendant did not demonstrate that the prosecution acted in bad faith in refusing to comply with the defendant's discovery request.  Id.  As in Gilmore, supra, we find the prosecution here likewise did not act in bad faith.  The prosecutor contended that the lab was prohibited by statute from divulging the information requested.  Nevertheless, the prosecutor offered to produce a lab employee to further explain the reasoning for failing to turn over the information.  Accordingly, it appears that a genuine dispute existed regarding whether the information was discoverable, and thus any delay necessary to adjudicate [Petitioner's] motion was attributable to [Petitioner].  Id.  Before a hearing could be conducted on whether the information was discoverable, however, Dr. Kessis withdrew from the case.

-12-

The record thus shows that much of the delay regarding the discovery request and subsequent dispute between the parties was caused by [Petitioner's] expert rather than the prosecutor.  After Dr. Kessis withdrew from the case, [Petitioner] abandoned his request for the disputed information and trial commenced a few months later.  At trial, [Petitioner] did not dispute the prosecutor's DNA evidence or present any DNA evidence of his own.  Thus, [Petitioner's] discovery request and ensuing dispute with the prosecutor delayed trial for no gainful reason.  Certainly, [Petitioner] cannot show bad faith on the part of the prosecutor who successfully opposed [Petitioner's] discovery motions and succeeded in excluding Dr. Kessis' testimony from trial.  See id.  Because much of the 23-month delay at issue here is attributable to [Petitioner], and it does not appear that the delays attributable to the prosecutor unnecessarily delayed the proceedings, we find this factor to weigh against a conclusion that [Petitioner] was denied a speedy trial.

People v. Warshaw, No. 257589, 2006 WL 234872, 1-3 (Mich.Ct.App. Jan. 31, 2006).

This Court agrees with the Michigan Court of Appeals' decision.  Most of the delay in this case resulted from the fact that Petitioner was in custody and awaiting trial in Macomb County, on unrelated charges, when the warrant in this case was issued, and, the delay in Petitioner's discovery requests and subsequent hearings regarding his expert were caused by him.  Moreover, Petitioner does not allege or show that the delay in prosecution was motivated by bad faith.  There is nothing in the record to suggest that any delay was intentionally caused by the prosecution or the trial court; the delay does not weigh heavily against the prosecutor because it does not appear to have been motivated by a "deliberate attempt to delay the trial in order to hamper the defense," Barker, 407 U.S. at 531, or by "bad faith, harassment or attempts to seek a tactical advantage."  United States v. Schreane, 331 F.3d 548, 553 (6th Cir. 2003).  Thus, this factor does not weigh in favor of Petitioner.

-13-

### 3.  Assertion of Petitioner's Sixth Amendment right

The third <u>Barker</u> factor is whether and how promptly and forcefully Petitioner asserted his right to a speedy trial.  As noted above, although Respondent argues that Petitioner failed to formally demand his federal-constitutional right to a speedy trial, the Court has found that Petitioner's request for dismissal of the charges in violation of Michigan's 180-day rule to be the functional equivalent of an assertion of the federal-constitutional right to a speedy trial.  As such, Petitioner asserted his right to a speedy trial.

### 4.  Prejudice

In considering the final <u>Barker</u> prong, prejudice to Petitioner from the pre-arraignment delay, "we must heed the Supreme Court's instruction to consider the possible prejudice suffered by the [Petitioner] in light of the interests safeguarded by the Sixth Amendment's speedy trial guarantee."  <u>Watford</u>, 468 F.3d at 907 (citations omitted).  "Three interests are paramount: (I) preventing oppressive pretrial incarceration; (ii) minimizing the anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired."  <u>Id</u>. (citations omitted).  The third factor, impairment of the defense, is the most important "'because the inability of a [petitioner] adequately to prepare his case skews the fairness of the entire system.'"  <u>Id</u>. (quoting <u>Barker</u>, 407 U.S. at 532 and <u>Schreane</u>, 331 F.3d at 557-58).

Regarding this, the Michigan Court of Appeals held:

> Finally, this Court must consider whether [Petitioner] was prejudiced as a result of the delay.  <u>Mackle</u>, <u>supra</u>.  In the context of the right to a speedy trial, two types of prejudice exist: (1) prejudice to defendant's person, and (2) prejudice to his defense.  <u>Cain</u>, <u>supra</u> at 114;

-14-

Wickham, supra.  Because this case involves a delay of more than 18 months, the prosecution bears the burden of rebutting the presumption of prejudice.  Id. at 112.  As argued by the prosecutor, the record evinces neither form of prejudice resulting from the delay.  No prejudice to [Petitioner's] person occurred because he was incarcerated on an unrelated offense during the entire delay.  People v. Holtzer, 255 Mich.App 478, 493; 660 NW2d 405 (2003).  There was similarly no prejudice to [Petitioner's] defense as a result of the delay.  [Petitioner] contends that the prosecutor's "pre-trial shenanigans" were designed to intimidate Dr. Kessis and prevent him from participating in the case.  However, although the record reflects that Dr. Kessis withdrew from the case, it does not reflect Dr. Kessis' reasons for withdrawing.  As argued by the prosecution, [Petitioner] merely speculates that the prosecutor successfully intimidated Dr. Kessis into withdrawing.  Moreover, after Dr. Kessis' withdrawal and the subsequent appointment of Speckin Laboratories, [Petitioner] abandoned his request for the disputed discovery items and proceeded to trial without them.  At trial, [Petitioner] did not contest the prosecutor's DNA evidence and presented no DNA evidence of his own.  As argued by the prosecution, [Petitioner] does not indicate how Dr. Kessis' absence negatively impacted his defense, nor does he explain why Dr. Kessis' testimony was necessary given that [Petitioner] failed to contest the prosecutor's DNA evidence at trial.  Accordingly, we find the presumption of prejudice attendant the 23-month delay, which was attributable in large part to defense discovery motions on which the prosecutor ultimately prevailed, to have been successfully rebutted by the prosecution.

Warshaw, No. 257589, 2006 WL 234872, 2-3.

The Court agrees with the Michigan Court of Appeals' decision.  Petitioner does not point to any evidence of prejudice relating to the "paramount interests" of the Sixth Amendment.  Watford, 468 F.3d at 907 (citations omitted).  He fails to argue that he suffered any oppressive pretrial incarceration.  Because he was properly incarcerated in jail or Michigan state prison during the entire period of the delay about which he complains, he cannot claim any oppressive pretrial incarceration resulting from the delay.  Id. at 907 (because Watford was already incarcerated on state murder charges, he suffered no oppressive pretrial incarceration at the hands of federal authorities).

-15-

Furthermore, Petitioner does not argue that he suffered any anxiety or concern during his pretrial delay or that his defense was impaired by the delay.  Petitioner's failure to allege prejudice of any kind from the delay weighs heavily against him and in favor of the prosecutor.

Overall, the Michigan Court of Appeals applied the correct standard and its application was neither contrary to nor an unreasonable application of Supreme Court precedent in determining that Petitioner's speedy trial rights were not violated.

IV.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on the claim raised in his petition.  Accordingly, the petition for writ of habeas corpus is DENIED.

SO ORDERED.


 s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 12, 2009


I hereby certify that a copy of the foregoing document was mailed Andrew N. Warshaw, Andrew Warshaw, 236462, Richard A. Handlon Correctional Facility, 1728 Bluewater Highway, Ionia, MI 48846 and to the attorneys of record on this date, February 12, 2009, by electronic and/or ordinary mail.

 s/Julie Owens_____
Case Manager, (313) 234-5160


-16-